## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ESPERANZA RAMIREZ, Individual** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CV-13-85-R** |
| | ) | |
| **GOODYEAR TIRE & RUBBER** | ) | |
| **COMPANY, an Ohio Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant
Goodyear Tire & Rubber Company. Doc. No. 71. For the following reasons, this motion
is GRANTED in its entirety.

## I. Background

Plaintiff Esperanza Ramirez worked for Defendant from approximately 1984 until
mid-2013. Between 1992 and 2009, Plaintiff worked as a Ply/Toeguard cutter, meaning
that she was responsible for cutting, splicing, and applying gum toeguard and shoulder
strips to ply for tires. This position required the operation of more than one machine. In
December 2002, Plaintiff had orthopedic surgery on her left shoulder in order to repair a
torn rotator cuff, and she returned to the Ply/Toeguard cutter position after she recovered
from the surgery. Then in October 2008, Plaintiff had orthopedic surgery to repair
another torn rotator cuff. Following this surgery, Plaintiff was required to undergo a
functional capacity evaluation (FCE) prior to returning to work.

At the time, Defendant's leave of absence policy provided that an employee would be required to take an FCE "depending on the nature of their injury . . . and the length of time out of the plant." Doc. No. 71, Ex. 10, at 2. The FCE, which is administered by a physical therapist, is designed to objectively ensure that an individual returning to work is capable of performing the physical requirements of a given job. It does so by taking the individual through certain physical tasks, such as lifting and carrying weights. If an employee's FCE results show that the employee is capable of performing her job requirements, the employee is returned to her previous position. And conversely, if that employee's FCE results do not show a job match, the employee is disqualified from the position and matched to other open and available positions that fit the employee's abilities.

After Plaintiff's treating physician determined that Plaintiff had reached maximum medical improvement following her second rotator cuff surgery, Plaintiff took an FCE on May 19 and 21, 2009. The results of this FCE indicated that Plaintiff's abilities did not meet the physical requirements of the Ply/Toeguard cutter position. These results were confirmed through a job match, which determined that Plaintiff's abilities were a 92.75% match with the physical requirements of the position. Specifically, Plaintiff did not meet the position's lifting requirements in several categories: (1) the requirement for the "Floor to Waist Lift – Rare" category was 65 pounds, but Plaintiff's FCE showed that she could only lift 40 pounds; (2) the requirement for the "Waist to Overhead Lift – Rare" category was 50 pounds, but Plaintiff's FCE showed that she could only lift 35 pounds; (3) the requirement for the "Waist to Overhead Lift – Occasional" category was 50 pounds, but

Plaintiff's FCE showed that she could only lift 30 pounds; (4) the requirement for the "Horizontal Lift – Occasional" category was 50 pounds, but Plaintiff's FCE showed that she could only lift 45 pounds; and (5) the requirement for the "Front Carry – Occasional" category was 50 pounds, but Plaintiff's FCE showed that she could only lift 45 pounds.

As such, Plaintiff was placed into a job match pool, in which her physical abilities were compared with the requirements of other available positions, and she was matched to a Bead Builder position. Plaintiff then began working as a Bead Builder on June 12, 2009. This position was at the same Lawton, Oklahoma plant as her prior position, and Plaintiff's pay, benefits, overtime opportunities, and shift schedule as a Bead Builder were identical to her former position. Plaintiff did not like this transfer, though, and she filed an EEOC Charge of Discrimination around this time. In her charge, Plaintiff alleged she had been discriminated against based in relevant part upon her national origin, gender, and age.

Plaintiff worked as a Bead Builder without injury until April 26, 2011, when she successfully bid into a Trucker ASRS position. Then on July 10, 2012, Plaintiff successfully bid into an Expediter position. While filling in as a Bead Builder on October 28, 2012, Plaintiff reached into a machine without disabling it, and she injured her arm in the process. According to Defendant's policy, bypassing a safety device is considered a violation of a "fundamental" safety rule and warrants immediate termination, even without previous discipline.

On March 7, 2013, Plaintiff was required to appear before a Review Board regarding the incident on October 28, 2012. Per Defendant's disciplinary policy, in order

to be required to appear before a Review Board, two supervisors must recommend that an employee be terminated, and three human resources professionals must approve of the recommendation. The Review Board consists of three senior-level managers that neither directly supervise the employee nor were directly involved in the incident in question. The Review Board receives a termination recommendation, and it then approves or modifies the termination recommendation after hearing the reasons in support of termination, as well as the employee's side of the story. In order for the employee to be terminated after the Review Board hearing, the three members of the board must unanimously decide that termination is appropriate; otherwise, the employee is retained.

Following Plaintiff's Review Board hearing on March 7, 2013, Plaintiff was allowed to return to work on a Letter of Commitment. Under Defendant's policy, when an employee is allowed to return to work on a Letter of Commitment, the employee is required to draft a letter: (1) acknowledging that a problem exists, (2) recognizing that the problem is the employee's responsibility to correct, and (3) committing to correcting the problem and acknowledging that failure to correct the problem can result in a Review Board hearing and possible termination. Such a letter is considered active for twelve months.

On April 21, 2013—approximately one-and-a-half months later—Plaintiff was lifting something while on the job and felt a sharp pain between her shoulder and neck. However, Plaintiff did not report this until April 26, 2013. Defendant's policy requires that on-the-job injuries be reported immediately after discovered, and violation of the policy can result in disciplinary action, including a Review Board hearing and

termination. Due to this policy and the fact that Plaintiff was already working while on a Letter of Commitment, Plaintiff was required to appear before a Review Board on May 2, 2013, for her failure to promptly report her injury. At the hearing, Plaintiff was given the opportunity to tell her side of the story and answer questions posed by the Review Board. Immediately following the hearing, the Review Board decided to terminate Plaintiff for violation of her Letter of Commitment. Despite this, Plaintiff's termination letter was dated June 5, 2013. Two days prior to the date of her letter of termination, Plaintiff filed a workers' compensation claim based upon her April 21 neck injury.

This suit was initially filed on January 25, 2013. In this suit, Plaintiff has made several claims against Defendant, including discrimination based upon her national origin, gender, and age, as well as retaliation based upon a workers' compensation claim and the filing of this discrimination suit. Defendant contends that all of Plaintiff's claims fail as a matter of law.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir. 1977) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Plaintiff's Discrimination Claims

As Plaintiff does not rely on direct evidence of discrimination in this case, the *McDonnell-Douglas* burden-shifting framework applies to Plaintiff's national origin, gender, and age discrimination claims. *See Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013); *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012); *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). Under this framework, Plaintiff must first establish her *prima facie* case, which requires that she show: "1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998) (citations omitted). If Plaintiff establishes her *prima facie* case, the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its action. *Id.* If Defendant can do so, Plaintiff must then show that Defendant's proffered reasons are pretextual. *Id.* (citation omitted).

Defendant argues that Plaintiff cannot meet her *prima facie* burden because she cannot show that she suffered an adverse employment action. And even if she could meet her *prima facie* burden, Defendant argues that Plaintiff cannot show that its proferred nondiscriminatory reasons for its actions are pretextual.

## A. No Adverse Employment Action

For her discrimination claims, Plaintiff contends that two separate actions by Defendant—its requiring her to take the FCE after her second shoulder surgery and its transfer of her to a different position after her FCE results showed that she could not meet

the requirements of her job—were adverse employment actions. Defendant argues that neither were adverse within the meaning of the discrimination laws, and the Court agrees.

**1. Defendant's valid FCE demand on Plaintiff was not adverse.**

First, Plaintiff did not suffer an adverse employment action when she was required to take the FCE in 2009. Courts have specifically held that "[a] valid FCE demand cannot constitute an adverse employment action in general discrimination claims." *James v. Goodyear Tire & Rubber Co.*, 354 F. App'x 246, 249 (6th Cir. 2009); *see Green v. CSX Hotels, Inc.*, 650 F.Supp.2d 512, 524 (S.D. W.Va. 2009). In this case, it is abundantly clear that Defendant's FCE demand on Plaintiff was valid. Defendant's policy in effect during this time provided that an FCE "will be administered on associates, . . . depending on the nature of their injury or illness and the length of time out of the plant." Doc. No. 71, Ex. 10, at 2. The Ply/Toeguard cutter position to which Plaintiff wanted to return required her to lift heavy amounts of weight,[1] and Defendant only made Plaintiff take the FCE after she had suffered her second torn rotator cuff in less than six years while working this job. The nature of Plaintiff's injury certainly would indicate the need for testing prior to her return to a position that would place strain on her repaired shoulders.

Plaintiff argues that the FCE demand was not valid for several reasons. First, Plaintiff asserts that she had two doctors' releases clearing her to return to work without restrictions, which Plaintiff contends means that she should not have been required to take the FCE. However, Defendant's policy does not provide for an employee being

---

[1] However infrequently Plaintiff had to lift heavy weights during a shift, she did testify in a workers' compensation proceeding that she had to lift between thirty-five and sixty-five pounds while on the job. *See* Doc. No. 71, Ex. 7, at 24.

excused from an FCE where the employee has releases from doctors in hand. Moreover, the notes that Plaintiff identifies cannot fairly be characterized as releases. One of the letters to which Plaintiff points—Dr. Jones' letter—is dated June 23, 2009, which is approximately one month after Plaintiff took her FCE. *See* Doc. No. 95, Ex. 25. And Dr. Jones' letter never states that he was releasing Plaintiff to return to work without an FCE. While his letter states his opinion that Plaintiff was physically fit and had no job limitations, Dr. Jones testified that when he wrote the letter, he had no knowledge of Plaintiff's job duties other than that she generally was a tire builder. *See* Doc. No. 97, Ex. 4, at 2. The other letter—Dr. Funderburk's—also never states that he was releasing Plaintiff to return to work without an FCE. Instead, it states that Plaintiff had reached maximum medical improvement, and that she would be able to take her FCE within two weeks. *See* Doc. No. 95, Ex. 24.

Plaintiff's other arguments fall equally short. Plaintiff argues that Defendant's FCE demand was invalid because conflicting FCE policies existed in its employee manual during this time. Yet only one of the policies Plaintiff identifies was in effect at the time Plaintiff was required to take the FCE. The second policy Plaintiff identifies is a revision that went into effect a few months after Plaintiff's FCE. Even if this revised policy would have been in effect during this time, though, it would still lead to the conclusion that Defendant's FCE demand on Plaintiff was valid. *See* Doc. No. 95, Ex. 11, at 1 (stating that an employee at the very least may be required to take an FCE following orthopedic surgery to repair a rotator cuff). Plaintiff also asserts that Defendant failed to follow the rest of its FCE policy when it purportedly did not include Plaintiff's treating

physician in the review process, but even if true, this would not render Defendant's FCE demand on Plaintiff invalid. Therefore, the Court determines that Defendant's FCE demand on Plaintiff was not an adverse employment action.

**2. Plaintiff's lateral transfer following the FCE was not adverse.**

The Court also finds that Plaintiff's transfer to the open Bead Builder position subsequent to her FCE was not an adverse employment action. The Tenth Circuit requires that in considering whether a given employment action is adverse within the meaning of the discrimination laws, the Court take "a case-by-case approach, examining the unique factors relevant to the situation at hand." *Sanchez*, 164 F.3d at 532 (quotation omitted) (internal quotation marks omitted). Notwithstanding this, "a mere inconvenience or an alteration of job responsibilities" is not considered an adverse employment action. *Id.* (citations omitted) (internal quotation marks omitted). And further, a truly lateral transfer that involves no significant changes in employment conditions is not rendered an adverse employment action because the employee views the transfer negatively. *See id.* at 532 n.6.

Having considered the evidence in this case, the Court finds that Plaintiff's transfer to the Bead Builder position was purely a lateral transfer. In comparing her Ply/Toeguard cutter position to the Bead Builder position to which she was transferred, Plaintiff's pay, benefits, overtime opportunities, shift schedule, and the location of her job all remained unchanged. And in fact, while Plaintiff's former position as Ply/Toeguard cutter required her to lift heavy amounts of weight, the Bead Builder position did not. Instead, the Bead Builder position matched with Plaintiff's demonstrated abilities in her

FCE, and Plaintiff was clearly capable of performing the job, as she did so for two years without any injury before she bid into a different position.

In describing her displeasure with her transfer to the position, Plaintiff testified that she was having trouble sleeping in 2009 because she "was unhappy that [she] had been disqualified from a job that [she] liked to do to a job that [she] didn't care to do." Doc. No. 71, Ex. 1, at 32. Plaintiff also testified that she liked working the Ply/Toeguard cutter job "[b]ecause it was easier than any other job in the plant." Doc. No. 97, Ex. 1, at 5. Despite Plaintiff's dissatisfaction with her transfer to what she asserts was a more difficult position, "not everything that makes an employee unhappy is an actionable adverse action." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quotation omitted) (internal quotation marks omitted). Here, the Court finds that Plaintiff's transfer to the Bead Builder position did not constitute an adverse employment action.

## **B. No Pretext**

Even if Plaintiff could show that she suffered an adverse employment action such that she could establish a *prima facie* case for her discrimination claims, the Court finds that Plaintiff cannot show that Defendant's proffered nondiscriminatory reasons for its challenged actions are pretextual. Defendant has shown that it acted pursuant to company policy both when it required Plaintiff to take the FCE, and also when it transferred Plaintiff to the open Bead Builder position pursuant to a job match using her FCE results. Thus, it is Plaintiff's burden to show that Defendant's stated reasons are actually pretext for discrimination.

Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted) (internal quotation marks omitted). Typical methods for showing pretext include: "(1) evidence that the defendant's stated reason for the adverse employment action was false; (2) evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances; or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quotation omitted) (internal quotation marks omitted).

### 1. The Comparators

In attempting to show pretext, Plaintiff initially argues that Defendant's FCE policy was inequitably applied to her. In support of this, Plaintiff identifies two comparators that supposedly were similarly situated but treated differently than she was. The first comparator is Alden Knighton. Mr. Knighton worked for Defendant as a Ply/Toeguard cutter during the relevant time period, and he was required to take an FCE following orthopedic surgery on his knee. Plaintiff argues that Mr. Knighton, who is a younger, white male, was similarly situated but treated better than she was, because he allegedly failed his FCE but was allowed to return to the Ply/Toeguard cutter position.

Plaintiff also identifies Bryan Taylor as a comparator. Mr. Taylor worked as a General Operator during the relevant time period, and he was required to take an FCE following orthopedic surgery. Plaintiff argues that Mr. Taylor, a younger, white male, was similarly situated but treated better than she was because he allegedly failed his FCE but was allowed to return to his General Operator position.

With regard to Mr. Knighton, Plaintiff did not provide the job match sheet used in determining whether his demonstrated abilities matched the requirements of his job. This is important because Mr. Knighton's FCE states that a job match existed, and to "[p]lease refer to the Job Match Grid for details." Doc. No. 95, Ex. 2, at 7. In comparing the raw data of his FCE to the requirements listed on Plaintiff's job match sheet, though, the only disparity the Court can find is that Mr. Knighton fell short by five pounds in one lifting category, "Waist to Overhead – Occasional." This is not enough to show pretext, particularly when compared to Plaintiff's job match sheet, which shows several disparities by as much as twenty-five pounds.

With regard to Mr. Taylor, multiple problems exist. First, the Court has trouble determining that Mr. Taylor is a good comparator to Plaintiff. While Mr. Taylor's position appears to encompass work on the machines on which Plaintiff worked in her Ply/Toeguard cutter position, Mr. Taylor held a different position than Plaintiff, meaning that the requirements of his position quite likely differed from the requirements of Plaintiff's Ply/Toeguard cutter position. Further, Plaintiff has not provided the Court with the job match sheet used for Mr. Taylor when it was determined that he could return to his General Operator position following his FCE. This is important because, as with Mr.

Knighton, Mr. Taylor's FCE states that there was a job match and refers the reader to his Job Match Grid for details.[2] Even if the Court compared the raw data from Mr. Taylor's FCE to the requirements of Plaintiff's position, though, it does not follow that Defendant's stated reason for Plaintiff's transfer was pretextual.[3]

This is particularly true in light of four other facts. First, subsequent to Plaintiff's complaints about the Bead Builder position, Defendant ran a second job match for Plaintiff in August 2009, comparing her FCE results to the requirements of individual machines in her former department. The only explanation for this is that Defendant wanted to see what its options were in satisfying Plaintiff's complaints about her work as a Bead Builder, and this counsels against pretext. Second, after breaking up the Ply/Toeguard cutter position Plaintiff previously held into multiple jobs in 2010, Defendant allowed Plaintiff to take a second FCE with a different physical therapist to see if she could meet the requirements of any of the new positions. While Plaintiff's results showed that she qualified for the Ply Repair/Toeguard Operator and Hotformer/Slitter positions, the former position was filled and Plaintiff did not elect to take the latter position. Affording Plaintiff the opportunity to test again demonstrates that Defendant was doing anything but discriminating against her, and this again counsels against pretext. Third, Dave McLane, a younger, white male working as a Ply/Toeguard

---

[2] While the FCE results for both Mr. Knighton and Mr. Taylor state that they matched to their previous jobs, Plaintiff's FCE results state the exact opposite: "There is not a job match. Please refer to the Job Match Grid for details." Doc. No. 71, Ex. 12, at 2.

[3] Plaintiff also argues that Mr. Taylor was treated differently than her in that he was not required to take an FCE after his second or third orthopedic surgeries, while she was required to take the FCE after her second orthopedic surgery. But the evidence shows that Plaintiff herself was allowed to return to work without an FCE after her first orthopedic surgery, while Mr. Taylor was required to take an FCE after his first orthopedic surgery. Thus, it is impossible to conclude that the evidence to which Plaintiff points indicates preferential treatment and pretext.

cutter during the relevant time, was required to take an FCE following orthopedic surgery, was disqualified from the position due to his FCE results, and was transferred based upon this disqualification. His being treated identically to Plaintiff again cuts against pretext existing in this case. And finally, Plaintiff not only worked as a Bead Builder for approximately two years after her transfer, but also she was allowed to bid into a Trucker ASRS position and later an Expediter position after her work as a Bead Builder. In other words, Plaintiff was allowed to transfer to two other positions more desirable to her after she was disqualified from the Ply/Toeguard cutter position and transferred to the Bead Builder position. This again indicates anything but pretext and discrimination.

### 2. Plaintiff's Other Arguments

Plaintiff's other arguments concerning pretext fare no better. First, Plaintiff argues that Defendant did not actually follow its policy when administering her FCE, because it did not include Plaintiff's treating physician in the FCE process. Yet Plaintiff has no evidence that this was outside of Defendant's practice or that any of the identified comparators were treated differently in this respect.

Plaintiff next points to the job matches that were run in August 2009. These job matches compared Plaintiff's first FCE results to the requirements of running specific machines in her former department—as opposed to the requirements of her former Ply/Toeguard cutter position—and as previously mentioned, it is the Court's understanding that these job matches were run due to Plaintiff's complaints about her Bead Builder position. The job match comparing Plaintiff's abilities to the manual ply

machine show a 100% match. And the job match comparing Plaintiff's abilities to the OLGA machine show a 94.20% match. Plaintiff asserts that she worked on the ply machine the vast majority of the time, but even if true, she admits that her former position required her to work on more than just the ply machine,[4] and that the different machines on which she worked had different physical demands. Therefore, the fact that these job matches showed she could work on this one machine does not establish pretext.

Plaintiff next argues that pretext is evidenced by looking at certain job description sheets showing that her former position's physical lifting requirements were actually less than the requirements to which she was held when she was disqualified from the position. But Defendant has submitted evidence establishing that the job descriptions identified by Plaintiff are old and were not in effect during the relevant time, and Plaintiff has no evidence to the contrary. Thus, this does not establish pretext either.

Plaintiff also argues that the fact that one of Defendant's HR employees tried to get her to drop her EEOC claim in exchange for a job other than the Bead Builder position establishes an inference of discrimination. However, Plaintiff testified that this occurred during the EEOC reconciliation process. It is reasonable that such an offer would be made during this process, and this does nothing to establish pretext for discrimination.

Plaintiff next points to an isolated comment allegedly made by the HR administrator that ran her job match when she was transferred to the Bead Builder position. The administrator allegedly said that Plaintiff was a liability, and Plaintiff

---

[4] Further, Plaintiff testified that she did not even work on a manual ply machine for at least the last six years she was in this position. *See* Doc. No. 97, Ex. 1, at 6.

asserts that this speaks to discrimination based upon age, because as people get older they tend to become more prone to injury. But stray remarks such as this are insufficient to create a jury issue in a discrimination case, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994), and this does not establish pretext for discrimination.

Finally, Plaintiff points to the EEOC's 2011 determination letter, stating its opinion that the evidence suggested that Defendant applies its policies inequitably. This is not enough to establish pretext, though, because "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one." *White v. Oklahoma*, 552 F. App'x 840, 848 (10th Cir. 2014) (quotation omitted).

In conclusion, "[t]he law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality." *Voltz v. Coca-Cola Enters., Inc.*, 91 F. App'x 63, 73 (10th Cir. 2004) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1319 (10th Cir. 1992)). The few irregularities identified by Plaintiff are too insubstantial to support an inference of discrimination and amount to nothing more than a scintilla of evidence supporting a finding of pretext. It follows that Defendant is entitled to summary judgment on Plaintiff's discrimination claims.

## IV. Plaintiff's Retaliation Claims

Plaintiff also asserts that she was retaliated against for filing both a workers' compensation claim and this case when she was terminated following her violation of two of Defendant's safety policies. Defendant argues that Plaintiff can neither establish

her *prima facie* case of retaliation nor show that its nondiscriminatory reason for her termination is pretextual.

The *McDonnell-Douglas* burden-shifting framework applies to Plaintiff's retaliation claim. *See Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004); *Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 806-07 (Okla. 1988). To establish a claim of workers' compensation retaliation under Oklahoma law, Plaintiff must demonstrate four elements: "(1) employment, (2) on-the-job injury, (3) receipt of treatment under circumstances which should put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted proceedings under the Workers' Compensation Act, and (4) consequent termination." *Harris v. Indus. Bldg. Servs., LLC*, No. 05-682-F, 2006 WL 290579, at *4 (W.D. Okla. Feb. 6, 2006) (citing *Buckner*, 760 P.2d at 806). Similarly, to establish a *prima facie* case of Title VII retaliation, Plaintiff must show that: "(1) she engaged in protected opposition to discrimination; (2) [Defendant] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover*, 382 F.3d at 1071 (citations omitted).

## A. No Causation

Defendant argues that Plaintiff's *prima facie* case of retaliation fails under both Oklahoma law and federal law due to a lack of causation, and the Court has little trouble agreeing. With regard to Plaintiff's workers' compensation retaliation claim, the factual timeline does not establish that there was a consequent termination within the meaning of Oklahoma law. This fourth prong of Plaintiff's *prima facie* case requires that she

"produce evidence sufficient to support a legal inference that [her] termination was 'significantly motivated' by retaliation for exercising [her] statutory rights." *Harris*, 2006 WL 290579, at *5 (citation omitted) (internal quotation marks omitted). While Plaintiff asserts that she was retaliated against based upon her June 3, 2013 workers' compensation claim, the evidence shows that immediately following her Review Board hearing on May 2, 2013, the board decided that she should be terminated. *See* Doc. No. 71, Ex. 38, at 4. In other words, the evidence shows that Defendant's decision to terminate Plaintiff came slightly over one month before she filed the workers' compensation claim for which she asserts she was retaliated against. As this claim did not exist at the time Defendant decided to terminate her, Plaintiff cannot show that the decision to terminate her was significantly motivated by the claim. Thus, Plaintiff cannot establish a *prima facie* case of workers' compensation retaliation.

With regard to Defendant's alleged retaliation based upon Plaintiff's discrimination suit, the analysis is somewhat different, but the conclusion is the same: Plaintiff cannot establish a *prima facie* case of retaliation. "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Plaintiff cannot show that but-for her January 25, 2013 filing of this suit, she would not have been terminated for the violation of her Letter of Commitment and Defendant's safety policies. Defendant has demonstrated that its policy provided that a Letter of Commitment was active for twelve months after written. Plaintiff wrote a Letter of Commitment on March 12, 2013, for violation of one of Defendant's safety policies, and this letter acknowledged that a

subsequent violation could result in a Review Board hearing and termination. One-and-a-half months after she wrote this letter, Plaintiff violated another of Defendant's safety policies (which also provided that a violation could result in termination) when she failed to promptly report an on-the-job injury. Therefore, Defendant's action in terminating Plaintiff following the Review Board hearing on May 2, 2013, was within its stated policy. Plaintiff has no evidence linking her termination to the filing of her suit on January 25, 2013, and thus Plaintiff cannot establish a *prima facie* case of retaliation.

## B. No Pretext

Even if Plaintiff could establish her *prima facie* case of retaliation based upon either her workers' compensation claim or her discrimination suit, though, the Court finds that Plaintiff cannot show that Defendant's nondiscriminatory reason for her termination is actually pretext. As previously stated, Plaintiff was terminated after violating two of Defendant's safety policies. Plaintiff's first violation, in which she bypassed a safety device, stuck her arm into an operating machine, and injured it, could have resulted in her termination even without prior discipline according to Defendant's policy. Yet Defendant chose not to terminate Plaintiff after this first violation. Notably, the Review Board hearing Plaintiff was required to attend in relation to this violation occurred on March 7, 2013—over one month after she filed this discrimination suit. If it were true that after Plaintiff filed this suit on January 25, 2013, Defendant was waiting for Plaintiff to make a mistake so that it could terminate her, Defendant would have terminated Plaintiff after this March 7, 2013 Review Board hearing. Instead of terminating Plaintiff at this time, however, Defendant elected to allow her to return to work on a Letter of Commitment.

Plaintiff then violated another of Defendant's safety policies shortly thereafter, the Review Board decided it was appropriate to terminate her after this second violation, and the Court cannot infer retaliatory motive from this sequence of events.[5]

Plaintiff contends that Defendant's stated reason for her termination is pretextual based upon her interpretation of the second safety policy she was said to have violated when she failed to promptly report an injury that occurred on April 21, 2013. The relevant policy states:

> In the event of an injury or illness, the associate is responsible for notifying his/her leader or designated representative immediately[.] In the event of an injury or illness that **does not result from a single event** (i.e. cut, scratch, strain from lifting, sprained ankle, etc.), the associate is required to notify their Area Manager or Business Center leadership immediately once they become **aware of the injury or illness**. Violation of this policy can result in disciplinary action up to and including Review Board with a recommendation for termination.

Doc. No. 71, Ex. 35, at 4; *see also* Ex. 36, at 1. Plaintiff argues that this policy provides that a strain from lifting is an injury that does not result from a single event, meaning that she actually followed company policy when she reported her injury five days after it occurred. However, the Court does not agree with Plaintiff's interpretation. No one can argue that a cut, scratch, and sprained ankle—the other identified injuries in the parenthetical included in the second sentence of this provision—are injuries that do not result from a single event. Indeed, it is difficult to imagine a situation where a cut, scratch, or sprained ankle could occur slowly over a long period of time. Thus, it appears

---

[5] With regard to Plaintiff's claim of retaliation based upon her workers' compensation claim, the Court notes that Plaintiff filed at least two other workers' compensation claims in 2002 and 2008 without consequence. Thus, even if the timeline of events were such that Plaintiff could establish that her termination was significantly motivated by retaliation, this further cuts against Defendants' actions being in retaliation for her 2013 workers' compensation claim.

that the parenthetical actually describes injuries that occur from a single event. Moreover, the policy states that an injury that does not result from a single event should still be reported as soon as the employee becomes aware of the injury, and in reporting the injury on April 26, Plaintiff stated that she felt a sharp pain in her shoulder and neck on April 21. This means that Plaintiff failed to follow Defendant's policy with respect to reporting injuries even if her muscle strain could be categorized as the type of injury that does not occur from a single event.[6] Thus, Plaintiff cannot establish pretext for her retaliation claim, and Defendant is entitled to summary judgment with respect to this claim.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

IT IS SO ORDERED this 30th day of July, 2014.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff also argues that Defendant failed to follow its termination policy when it sent her a letter of termination, as opposed to calling her. This is incredibly minor, however, and it does not help to establish that Defendant's stated reasons for her termination are pretextual.